Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
sgold@kalielpllc.com
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783

Attorneys for Plaintiffs
and the Putative Class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDIE JOHNSON, LISA McGLOTHEN, and JUSTIN HEARD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 5:17-cv-02477-JGB-SP<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

# **TABLE OF CONTENTS**

I.  Introduction..................................................................................................... 1

II.  Factual Background ....................................................................................... 3

III.  The Arbitration Clause Improperly Deprives Consumers of the Right to Seek Public Injunctive Relief in Any Forum and is Therefore Unenforceable Under *McGill* .......................................................................... 4

    A.  Background: *McGill* Prohibits Waivers of the Right to Seek Public Injunctive Relief.......................................................................... 4

    B.  The Waiver at Issue in This Case Is Barred by *McGill* ....................... 5

    C.  Because the Waiver Is Invalid, The Rest of the Arbitration Clause is Null and Void .................................................................................. 13

    D.  *McGill* is Not Preempted by the FAA............................................. 14

        1.  *McGill* is a Generally Applicable Contract Defense ............... 16

        2.  McGill Does Not Disfavor Arbitration .................................... 17

        3.  McGill Does Not Interfere with Any of the Fundamental Attributes of Arbitration ........................................................ 18

IV.  Conclusion ................................................................................................. 20

# **TABLE OF AUTHORITIES**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)................................16

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)........................ 14, 15, 18

*Blair v. Rent-A-Ctr., Inc.,* No. C 17-02335 WHA, 2017 WL 4805577, at *6 (N.D. Cal.
  Oct. 25, 2017).............................................................................................7, 16, 17

*Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1081, 988 P.2d 67
  (1999)...........................................................................................................19

*Gutierrez v. Wells Fargo*, 730 F.Supp.2d 1080, 1127 (N.D. Cal. 2010) ....................12, 13

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014) ......................15

*Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1061 (9th Cir. 2013)............................11

*McArdle v. AT&T Mobility LLC*, No. 09-CV-01117-CW, 2017 WL 4354998, at *5 (N.D.
  Cal. Oct. 2, 2017)......................................................................................passim

*McGill v. Citibank, N.A.*, 2 Cal.5th 945, 961 (2017) ............................................passim

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967)..........14

*Rappley v. Portfolio Recovery Assocs., LLC*, No. EDCV17108JGBSPX, 2017 WL
  3835259, at *6 (C.D. Cal. Aug. 24, 2017) ...................................................... 10, 11

*Rent-A-Center West, Inc. v. Jackson* (2010) 561 U.S. 63, 68..........................................5

*Roberts v. AT&T Mobility LLC,* No. 15-CV-03418-EMC, 2018 WL 1317346, at *6
  (N.D. Cal. Mar. 14, 2018)........................................................................ 15, 16, 19

*Sakkab* [*v. Luxottica Retail N. Am*], 803 F.3d [425, 437 (9th Cir. 2015)].......................14

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 431 (9th Cir. 2015)..........................passim

*See, e.g., Evans v. DSW, Inc.,* No. CV 16-3791 JGB (SPX), 2017 WL 7058232, at *7
  (C.D. Cal. Sept. 14, 2017)..........................................................................................9

*Wright v. Sirius XM Radio Inc.*, No. SACV1601688JVSJCGX, 2017 WL 4676580, at *9
  (C.D. Cal. June 1, 2017) ...................................................................................... 10, 11

**STATUTES**

9 U.S.C. § 2.................................................................................................5, 14

Cal. Bus. & Prof. Code § 17200, *et seq.* ...................................................................9

Civil Code § 3513 .................................................................................. 4, 5, 15, 16

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

**REGULATIONS**

70 Fed. Reg. 9127-01, 9131 ............................................................ 12

74 Fed. Reg. at 59035.................................................................. 11

## I. Introduction

Brandie Johnson, Lisa McGlothen, and Justin Heard ("Plaintiffs") allege Defendant, JP Morgan Chase Bank, N.A. ("Chase" or "Defendant") engages in a multi-prong strategy to increase the number of overdraft ("OD"), insufficient funds ("NSF"), and Out of Network ATM ("OON") fees assessed on California consumers with five separate deceptive and improperly disclosed practices. Because these fees impact vulnerable consumers—including, disproportionately, members of communities of color, the elderly and the young—these fees and the manner in which they are assessed and disclosed have been a source of continuing public conversation, news and debate for many years. Policymakers have engaged with these issues for more than a decade. Just this month, a U.S. Senator called for legislation banning OD fees altogether.[1] The Consumer Financial Protection Bureau has specifically cautioned against one of the four challenged overdraft practices in this case.[2] And numerous public interest groups have performed research and issued calls for action on the abusive fee practices Plaintiffs challenge. In short, the allegations in Plaintiffs' Complaint concern matters of extreme public import.

Holding banks to their contractual promises is particularly important in the OD/NSF Fee context. The absence of any uniform set of federal or state regulations has led the specific features of overdraft policies—when and how overdrafts are calculated and the process by which fees are assessed—to "vary considerably from institution to institution."[3] This makes accurate contract and marketing disclosures—

---

[1] Li Zhou, Vox, *Banning Overdraft Fees: Cory Booker's New Idea to Tackle Big Banks*, Vox (Aug. 2, 2018), *available at* https://www.vox.com/2018/8/2/17640068/cory-booker-bank-overdraft-fees
[2] *See* Dkt. 22, Second Amended Complaint ("Compl.") ¶ 17.
[3] Consumer Fin. Prot. Bureau, *Study of Overdraft Programs: A White Paper of Initial Data Findings 47* (June 2013) (CFPB Study), *available at* http://bit.ly/1NvT3Nv.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

the documents relied upon by the general public when deciding with whom to bank—absolutely essential.

Chase is one of the largest consumer banks in the country, with over 1,000 branches in California.[4] Plaintiffs' allegations concern a broad swath of Chase's fee practices, and it is likely they touch virtually each Chase accountholder who has incurred or will incur an OD, NSF, or OON Fee in California.

Chase brings this Motion to Compel and asks the Court to send all of Plaintiffs' claims to arbitration in reliance on an arbitration provision that is unenforceable under California law. (*See* Dkt. 24-3, Memorandum in Support of Motion to Compel Arbitration ("Mot.").) The arbitration provision in Chase's account agreement is void under the California Supreme Court's ruling in *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 961 (2017), which invalidates arbitration provisions that bar a plaintiff's ability to seek public injunctive relief. Chase concedes its provision expressly bars Plaintiffs from seeking public injunctive relief in any forum. Nonetheless, Chase argues its arbitration provision is still enforceable because the injunctive relief Plaintiffs seek is purportedly "not for the general public" and because the *McGill* rule is supposedly preempted under federal law. Neither argument is persuasive.

First, the Complaint makes it clear that the relief Plaintiffs seek is on behalf of the general public—including current Chase accountholders who have incurred the relevant fees due to misleading and deceptive representations, current Chase accountholders who will incur the fees due to those same misrepresentations, and California consumers who may in the future decide to bank with Chase based on the deceptive account disclosures disseminated to and consumed by the California public.

---

[4] According the FDIC, Chase maintains 1,002 branches in the state of California. *See* FDIC Bank Find, *available at* https://research.fdic.gov/bankfind/.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

When the largest bank in the country, with over 1,000 branches in the State of California, publishes account documents and marketing materials in its branches and on the Internet that contain material misrepresentations and omissions, that conduct affects the general public. It is precisely the type of conduct California's legislature sought to bar with the Unfair Competition Law. Consumers make important decisions regarding with whom to bank in reliance on these publicly available documents. Indeed, the free market for banking services cannot operate—and consumers cannot make rational banking decisions—if banks are allowed to misrepresent core fee practices. It is therefore in everyone's interest—not just the Plaintiffs and the Class—that Chase's disclosures are accurate and not misleading.

Second, *McGill* is not preempted under the FAA. As several courts have already held, *McGill* is a generally applicable contract defense that does not disfavor or otherwise interfere with the fundamental attributes of arbitration. The Court should therefore deny Chase's Motion to Compel in its entirety.

## II. Factual Background

Plaintiffs allege Chase engages in a systematic campaign of deception with respect to several of the fees it imposes on accountholders. Specifically, Plaintiffs challenge five distinct practices, and argue Chase deceives the general public in publicly available account and marketing documents with respect to each: 1) Chase assesses overdraft fees on transactions that do not overdraw checking account available balances; 2) Chase assesses overdraft fees on one-time debit card transactions like those for Uber and Lyft ride-share services or gas station purchases; 3) Chase assesses Out of Network ATM Fees for simple balance inquiries that precede cash withdrawals at the same ATM; 4) Chase assesses both insufficient funds fees and overdraft fees on the same transactions; and 5) Chase assesses overdraft fees in excess of its own three-per-day cap. (Compl. ¶ 1.) With respect to each fee it imposes, Plaintiffs allege Chase misrepresents or omits material information

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

pertaining to when and how it chooses to impose it. (Compl. ¶¶ 19-33; 47-48; 61-65; 80-83; 99-101.) Chase makes these material misrepresentations and omissions on its website, in marketing materials, and in account documents, which are available to the general public on the Internet and in branches. (*Id.*; *see also* Dkt. 22-1, Ex. A to Compl.; Dkt. 22-2, Ex. B to Compl.; Declaration of Jeffrey Kaliel ("Kaliel Decl.") ¶¶ 2-8.) Plaintiffs bring both breach of contract claims and claims under California's Unfair Competition Law. Among their requests for relief, Plaintiffs ask this Court, on behalf of the general public, to enjoin Chase's misleading and deceptive conduct by ordering Chase to provide deception-free disclosures which clearly and accurately describe its various fee practices. (Compl. at p. 32.)

## III. The Arbitration Clause Improperly Deprives Consumers of the Right to Seek Public Injunctive Relief in Any Forum and is Therefore Unenforceable Under *McGill*

### A. Background: *McGill* Prohibits Waivers of the Right to Seek Public Injunctive Relief

In *McGill*, the Supreme Court of California unanimously held that a contract provision purporting to prevent a consumer from seeking public injunctive relief in any forum is unenforceable. "Public injunctive relief" is relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal.5th at 951. The issue before the court was whether the arbitration provision in question "is valid and enforceable insofar as it purports to waive [plaintiff's] right to seek public injunctive relief *in any forum*." *Id.* at 956 (emphasis in original). After finding that the complaint did, in fact, seek public injunctive relief, and that such relief was available under the CLRA, UCL, and FAL, the court concluded that the "arbitration provision here at issue is invalid and unenforceable under state law insofar as it purports to waive [plaintiff]'s statutory right to seek such relief." *Id.* at 958-61.

4

To reach this result, the court relied on Civil Code § 3513, which provides that "a law established for a public reason cannot be contravened by private agreement." The court explained that because the relief available under the UCL, the CLRA, and the FAL is "primarily for the benefit of the general public," any waiver of the right to seek public injunctive relief under those statutes "would seriously compromise the public purposes the statutes were intended to serve." *Id.* Accordingly, the waiver was deemed invalid. *Id.*

The court also rejected the movant's Federal Arbitration Act ("FAA") preemption argument. Under the FAA, arbitration agreements, like other contracts, "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 962, quoting *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010); *see also* 9 U.S.C. § 2 (stating that written arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract"). Since the contract defense asserted by the plaintiff—that a law established for a public reason cannot be contravened by private agreement, *see* Civ. Code § 3513—was a generally applicable basis for revocation of a contract, it fell within the FAA's savings clause. *See McGill*, 2 Cal.5th at 961-66; *accord* 9 U.S.C. § 2. Accordingly, under *McGill*, "a provision in any contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *McGill*, 2 Cal.5th at 962.

**B.    The Waiver at Issue in This Case Is Barred by *McGill***

The holding in *McGill* is directly applicable to the instant case. Like in *McGill*, the Complaint seeks a public injunction under the UCL. (*See* Compl. at ¶ 3 ("Plaintiffs seek an injunction on behalf of the general public to prevent CHASE BANK from continuing to engage in its illegal and deceptive practices"); ¶ 142

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

("Plaintiffs request an injunction on behalf of the general public to prevent Chase from continuing to engage in the unlawful conduct described herein); p. 32 (In the Prayer for Relief section, requesting "public injunctive relief, including to ensure compliance with the UCL").

And like in *McGill*, the arbitration clause improperly bars public injunctive relief in any forum. It accomplishes this by requiring arbitration of all claims, "regardless of what theory they are based on or whether they seek legal or equitable remedies," while at the same time barring the arbitrator from awarding public injunctive relief.

> Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:
> 1.    SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAI OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIV EPROCEEDING;
> 2.    SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;
> 3.    BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR
> **4.    SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.**
>
> [. . . ]
>
> No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, **nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party**.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

(Dkt. 24-2, Ex. C to Mot. at 105; Dkt. 24-2, Ex. B to Mot. at 64-65).[5]

Because a consumer could not ask any court or arbitrator to enjoin Chase from continuing to engage in in unfair business practices, this provision is unenforceable under *McGill*. The prohibition on bringing "any and all claims and disputes" to court, combined with the ban on seeking injunctive relief on behalf of the public in arbitration, has the effect of eliminating a consumer's ability to seek injunctive relief under the UCL that has "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public" either in arbitration or in a court. Thus, "it is invalid and unenforceable under California law." *McGill*, 2 Cal.5th at 961.

Since *McGill*, several courts in the Ninth Circuit have struck down similar arbitration clauses to the one at issue here for failing to allow any forum for Plaintiff to seek public injunctive relief. For example, in *McArdle v. AT&T Mobility LLC,* No. 09-CV-01117-CW, 2017 WL 4354998, at *5 (N.D. Cal. Oct. 2, 2017), the Court granted Plaintiff's Motion for Reconsideration, finding the parties' agreement to arbitrate all claims, including claims for public injunctive relief under the UCL, was unenforceable under *McGill. Id; see also Blair v. Rent-A-Ctr., Inc.,* No. C 17-02335 WHA, 2017 WL 4805577, at *6 (N.D. Cal. Oct. 25, 2017) (holding *McGill* rendered arbitration clause unenforceable with respect to plaintiff's UCL claim). Like in *McArdle* and *Blair*, this Court should find Chase's arbitration provision—which includes a waiver of the right to seek public injunctive relief—to be unenforceable.

---

[5]Plaintiffs do not concede that the versions of the Account Agreement Chase attaches to its Motion to Compel are the versions of the Account Agreement that will govern Plaintiffs' breach of contract claims. Nonetheless, for purposes of this Motion to Compel, Plaintiffs and Defendant agree that it does not matter which version of the Account Agreement the Court analyzes because they all purport to waive the right to seek public injunctive relief in any forum. (*See* Mot. at 4 n. 3; *see also* Dkt. 24-2, Ex. A to Mot. at 24; Dkt. 22-1, Ex. A to Compl. at 16.)

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

Chase concedes that its arbitration clause bars public injunctive relief in any forum. (*See* Mot. at 4 (Noting the Account Agreement "requires individual arbitration and precludes the arbitrator from awarding relief on other than an individual basis, including public injunctive relief.").) Knowing its agreement is facially unenforceable under *McGill* and its progeny, Chase instead argues that Plaintiffs are still subject to arbitration under the unenforceable arbitration agreement because Plaintiffs do not actually seek "public injunctive relief" but instead seek injunctive relief only on behalf of themselves and others similarly situated. Chase's argument fails.

Plaintiffs seek relief on behalf of the general public. When the largest bank in the country with over 1,000 branch locations in the state of California misleads consumers in *publicly available documents* regarding its overdraft, insufficient funds fees, and out of network ATM fees, that deception harms the general public—including current Chase accountholders who have incurred the relevant fees due to misleading and deceptive representations, current Chase accountholders who will incur the fees due to those same misrepresentations, and California consumers who may in the future decide to bank with Chase based on the deceptive account disclosures disseminated to and consumed by the California public. The free market depends on consumers being able to make rational choices regarding to whom they would like to entrust their money. Chase's account documents and marketing materials, including its Consumer Deposit Account Agreement (Ex. A to Compl.), Fee Schedule, Online Banking Agreement, and its "Guide to Your Account" (Ex. B to Compl.) are public documents available in Chase branches and online to *all* consumers, not just Chase accountholders. (Kaliel Decl. ¶¶ 2-8.) They are thus no different than "solicitations or advertisements directed to the general public,"—deception Chase concedes may form the basis for public injunctive relief. (Mot. at 15.) Making sure Chase's publicly available account documents are free and clear of deception—so that consumers can choose their banking institution without being

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

misled about the fees they might incur—is to the benefit of all consumers and indeed the operation of the market for banking services, not just Chase accountholders who have or could in the future incur improper fees.[6]

That Plaintiffs seek relief on behalf of the "general public" and not merely on behalf of "themselves and the class," as Chase contends, is supported by a comparison of the facts here to the facts in *McGill*. In *McGill*, the Plaintiffs sought injunctive relief when Citibank made deceptive misrepresentations in advertising a "credit protector plan" to Citibank credit card holders. Only Citibank credit card holders were able to purchase the deceptively-marketed "credit protector plan," and thus, by Defendant's blinkered logic, only Citibank credit card holders would benefit from the injunctive relief Plaintiff sought. Defense counsel in this case also represented Citibank in the *McGill* case and tried the same, unavailing argument there and lost. The Court held, "we disagree with Citibank that McGill has failed adequately to . . . explain how the public at large would benefit from [the injunctive] relief." *McGill*, 2 Cal.5th at 957. In so holding, the Court based its decision, in part, on Plaintiff's request for an injunction to prevent Citibank from continuing to use "advertising that includes false, misleading or deceptive information, and material omissions" in violation of the UCL when advertising its credit protection plan to its cardholders. *Id*. at 956-57.

---

[6] Nor does Plaintiffs' request for monetary relief in any way undercut or diminish Plaintiffs' request for public injunctive relief. Plaintiffs can seek damages in compensation for the harm they suffered while at the same time seeking to enjoin Chase from continuing to engage in the deceptive and illegal conduct. *See, e.g., Evans v. DSW, Inc.,* No. CV 16-3791 JGB (SPX), 2017 WL 7058232, at *7 (C.D. Cal. Sept. 14, 2017) (Holding that plaintiffs may pursue claims for damages and equitable relief when damages were inadequate to protect the consuming public from the defendant's ongoing deceptive advertising practices).

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

Here, like in *McGill*, Plaintiffs allege "Defendant committed deceptive, unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*." when engaging in several deceptive business practices that it fails to disclose to consumers. (Compl. ¶ 139.) There is zero difference between the relief sought in *McGill* and the relief sought here. One bank's misrepresentations are just as amenable to public injunctive relief as another's. Chase's argument refuses to recognize that *McGill* is the law of the land. *See also McArdle*, 2017 WL 4354998 (granting Plaintiff's Motion for Reconsideration and vacating the arbitral award post-*McGill* in a case premised on AT&T charging exorbitant international roaming fees *on AT&T customers*).

It is helpful to contrast the circumstances in *McGill* and the instant matter with those in *Rappley v. Portfolio Recovery Assocs., LLC,* No. EDCV17108JGBSPX, 2017 WL 3835259, at *6 (C.D. Cal. Aug. 24, 2017), in which the Court granted defendant's motion to compel arbitration. In that case, the plaintiff brought suit against defendant challenging its debt collection practices. In *Rappley*, there was no allegation that any publicly disseminated disclosures contained any misrepresentations or omissions. Likewise, there was no allegation that changing the Defendant's debt collection on a prospective basis would benefit individuals other than the class. Nor could there have been. In *Rappley*, the very nature of the relief sought—changing defendant's debt collection practices—could only potentially affect *those already indebted* to companies on behalf of whom the debt collector was acting.

Equally unhelpful to Chase is *Wright v. Sirius XM Radio Inc.*, No. SACV1601688JVSJCGX, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017). In that case, the Court held the injunctive relief sought was private and not public because it would only affect current holders of the Sirius lifetime subscription—*a plan that Sirius no longer sold. Id*. at *9 n. 2. In other words, the general public could not

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

possibly benefit from the perspective relief because the general public could no longer buy the deceptively marketed product.

Unlike both *Rappley* and *Wright*, the relief sought here benefits more than a select group of individuals. This is not a case of a small debt collector using improper debt collection tactics on a tiny group of consumers, or the case of a radio company historically using deception to market a product that has long been taken off the market. This is a case of the largest bank in California fundamentally misrepresenting the fees it charges. California consumers are signing up from Chase checking accounts every day, in reliance on publicly disseminated account documents and marketing materials that contain material misrepresentations and fail to accurately disclose when consumers will be charged fees. Likewise, current Chase checking accountholders are choosing to engage in financial transactions every day that they have no idea will result in the imposition of penalizing fees. In other words, unlike in *Rappley* and *Wright*, Chase's deceptive conduct is ongoing and far-reaching. If this Court ultimately enters an order enjoining Chase from continuing to engage in its illegal conduct, and orders Chase to provide disclosures free of deception, such an order will benefit not just the Plaintiff and a small group of consumers: it will benefit the California public. [7]

Chase also argues that Plaintiffs' UCL claims are merely a repackaging of their breach of contract claims. The argument rests on the false premise that disclosures

---

[7] The analysis in *Kilgore v. KeyBank, Nat. Ass'n,* 718 F.3d 1052, 1061 (9th Cir. 2013) is also inapplicable here. In *Kilgore*, the putative class included only 120 individuals, the defendant had already stopped the challenged conduct, and there was no contention that enjoining KeyBank from reporting 120 student loan defaults to credit agencies would in any way benefit the general public. That is not at all analogous to the situation here: the putative class consists of thousands of members or more (Compl. ¶114), Chase's illegal and deceptive conduct is ongoing (Compl. ¶142), and, as explained *supra*, enjoining Chase from continuing to misrepresent its practices in publicly available marketing and account documents will benefit the general public.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

cannot, in it of themselves, be misleading. Not so. To avoid overdraft fees, consumers must rely on the bank's representations to "understand[] how overdraft services provided by their institutions operate." 74 Fed. Reg. at 59035. A bank that has "not disclosed at all," or "not sufficiently disclosed" a particular feature of its overdraft program risks "misleading" a "reasonable consumer[]" over the "circumstances under which overdraft fees would be assessed." Consumer Fin. Prot. Bureau, Supervisory Highlights at 8 (Winter 2015), *available at* http://bit.ly/2vq9by2 ("CFPB Supervisory Highlights"). And failing to "prominently disclose" key features of a bank's overdraft program can lead to a cycle of cascading overdrafts and debilitating fees. *See Gutierrez v. Wells Fargo*, 730 F.Supp.2d 1080, 1127 (N.D. Cal. 2010).

"Clear disclosures and explanations to consumers of the operation, costs, and limitations of an overdraft protection program" are "fundamental to enabling responsible use of overdraft protection" and minimizing "potential consumer confusion and complaints." Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127-01, 9131 (Feb. 24, 2005). Indeed, the most "frequent" and "salient" overdraft-related consumer complaints to federal regulators all involve inadequate notice. Rebecca Borné, Peter Smith, and Rachel Anderson, *Broken Banking: How Overdraft Fees Harm Consumers and Discourage Responsible Bank Products* 8 (May 2016), *available at* http://bit.ly/2tsunBQ. Without accurate notice, account-holders "ha[ve] no reason to anticipate" a bank's often complex overdraft policies. CFPB Supervisory Highlights at 8.

That a bank's disclosures regarding its overdraft fees can be deceptive and actionable under the UCL is not a new concept. Several years ago, Wells Fargo was found to have sowed "misunderstanding" over its decision to process debit card charges on a "high-to-low" basis. *Gutierrez*, 704 F.3d at 717, 728 n.9. The bank's account contracts contained "*misleading statements*" about its posting scheme that led consumers to reasonably believe that transactions would be posted in the reverse

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

order—from lowest-dollar purchase to highest-dollar purchase—which would have avoided significant and unnecessary overdraft fees. *Id.*

In sum, Plaintiffs' Complaint, which seeks to ensure Chase's disclosures are accurate and not misleading, provides a vital benefit to the general public, not just to Plaintiff and the putative Class.

## C. Because the Waiver Is Invalid, The Rest of the Arbitration Clause is Null and Void

Chase does not argue, nor could it, that Plaintiffs' claims for public injunctive relief could be severed from her other claims. The plain language of the arbitration clause renders that idea a nullity. Because the provision waiving the right to seek public injunctive relief is unenforceable, the entire arbitration agreement is null and void under the arbitration clause's "poison pill" provision. That provision provides that,

> If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration.

(Dkt. 24-2, Ex. C. to Mot. at 105.)

"Claim" is defined in the Agreement broadly as any "disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included." (*Id.*) Thus, under the arbitration provision's "poison pill" provision, Plaintiffs' entire Complaint must return to Court rather than arbitration.

As the U.S. District Court for the Northern District of California explained under similar circumstances:

> The language of the 'poison pill' sentence unambiguously provides that 'the entirety of this arbitration provision shall be null and void' if subsection 2.2(6), waiving claims and

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

relief on behalf of other persons, is found to be unenforceable. . . . The contract as actually written declares the entire arbitration provision null and void because the waiver of public injunctive relief is unenforceable. The Court notes that although the parties need not have agreed to so broad a 'poison pill,' there was reason for them to do so. *See Sakkab* [*v. Luxottica Retail N. Am*], 803 F.3d [425, 437 (9th Cir. 2015)] ('The FAA contemplates that parties may simply agree *ex ante* to litigate high stakes claims if they find arbitration's informal procedures unsuitable.').

*McArdle*, 2017 WL 4354998, at *5.

As in *McArdle*, the waiver of public injunctive relief is unenforceable under *McGill*, "and this triggers the 'poison pill' rendering the entire arbitration provision null and void." *Id.* Accordingly, none of Plaintiffs' claims are subject to arbitration, and the Motion to Compel should be denied.

### D. *McGill* is Not Preempted by the FAA

The Federal Arbitration Act ("FAA") does not pre-empt the *McGill* rule. "'The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements.'" *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 431 (9th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). It provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The final clause of section 2, called the "saving clause" provides that agreements to arbitrate can "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Sakkab*, 803 F.3d at 431 (quoting *Concepcion*, 563 U.S. at 339). It was designed to "'make arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* at 434 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967)) (emphasis added). Although "[t]he

14

FAA contains no express pre-emptive provision," it pre-empts state law in two circumstances: (1) when a contract defense is not "generally applicable," i.e., it "single[s] out arbitration agreements for special treatment;" or (2) when it "conflicts with the FAA's objectives" even if it is a "generally applicable" defense. *Id*. at 431–32 (citing *Concepcion*, 563 U.S. at 339).

In *Sakkab*, the Ninth Circuit evaluated FAA preemption and held that the FAA did not preempt a very similar California Supreme Court rule called the *Iskanian* rule. *Id*. at 432–440. The *Iskanian* rule declared that any waiver of an individual's right to bring PAGA claims in any forum was unenforceable. *Id*. at 429; *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014). The *Iskanian* Court's rationale was based in part on the exact same California statute on which the *McGill* rule is based, Civil Code § 3513. *Sakkab* 803 F.3d at 431; *Iskanian*, 59 Cal. 4th at 383. Like the UCL action here for public injunctive relief, PAGA claims are brought by an individual civil plaintiff to benefit the public—in that case, other employees; here, other consumers. The Ninth Circuit held that the FAA did not preempt the *Iskanian* rule because *Iskanian* announced a rule that applied equally to arbitration and non-arbitration agreements and did not conflict with the objectives of the FAA. *Sakkab* 803 F.3d at 434–439. *Sakkab* is directly on point and, as discussed more fully below, requires this court to hold that the FAA does not pre-empt the *McGill* rule because it too, like *Iskanian*, is a generally applicable contract defense that does not conflict with the objectives of the FAA.

For this reason, courts in this Circuit routinely reject the argument that *McGill* is preempted by the FAA. *See Roberts v. AT&T Mobility LLC,* No. 15-CV-03418-EMC, 2018 WL 1317346, at *6 (N.D. Cal. Mar. 14, 2018) ("If the California state law rule (*Iskanian*) prohibiting waiver of representative PAGA claims (in any forum) does not interfere with the fundamental attributes of arbitration, then it is difficult to see how the California state law rule (*McGill*) prohibiting waiver of public injunctive

15

relief (in any forum) could"); *see also McArdle*, 2017 WL 4354998, at *3 (applying *Sakkab* and concluding *McGill* was not preempted); *Blair,* 2017 WL 4805577, at *5 ("*McGill* does not violate the FAA's prohibition on rules specifically disfavoring arbitration, and is therefore not preempted by the FAA"). This Court should do the same.

### 1. *McGill* is a Generally Applicable Contract Defense

*McGill* falls within the ambit of the FAA's saving clause because it is a generally applicable state law contract defense. As the Ninth Circuit explained, a defense is "generally applicable" where it applies "equally to arbitration and non-arbitration agreements." *Sakkab,* 803 F.3d at 432.[8] The *Sakkab* court held that the *Iskanian* rule was generally applicable because "[t]he rule bars any waiver of PAGA claims, regardless of whether the waiver appears in an arbitration agreement or a non-arbitration agreement." *Id.* (emphasis added). Similarly here, the *McGill* rule bars any waiver of the right to bring public injunctive relief claims, whether the waiver appears in an arbitration or a non-arbitration agreement. As the California Supreme Court explained:

> The contract defense at issue here—"a law established for a public reason cannot be contravened by a private agreement" (Civ. Code, § 3513)—is a generally applicable

---

[8] Chase's contention that *McGill* was wrongly decided to the extent it relied on the "effective vindication" exception articulated in *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) is a red herring. *McGill's* central holding was merely that Civil Code § 3513 is a generally applicable contract defense, which therefore falls under the FAA's saving clause. That holding does not rise or fall on its citation to *Italian Colors*. Indeed, in holding the *Iskanian* rule was not preempted under the FAA, the Ninth Circuit did not discuss the "effective vindication" exception—nor did it need to. *Iskanian* and *McGill* are not preempted because they are generally applicable contract defenses. *See generally Sakkab,* 803 F.3d at 437; *see also Roberts*, 2018 WL 1317346, at *5-6 (holding *McGill* was not preempted); *McArdle,* 2017 WL 4354998, at *4 (same).

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP

contract defense, i.e., it is a ground under California law for revoking any contract. It is not a defense that applies only to arbitration or that derives its meaning from the fact that an agreement to arbitrate is at issue. As explained above, a provision in any contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law.

*McGill*, 2 Cal. 5th at 962; *see also Blair,* 2017 WL 4805577, at *5 (finding that the *McGill* rule is a generally applicable contract defense); *McArdle*, 2017 WL 4354998, at *4 (same).

## 2. *McGill* Does Not Disfavor Arbitration

*McGill* does not disfavor arbitration. In *Sakkab*, the Ninth Circuit held that the *Iskanian* rule did not disfavor arbitration because it expressed "no preference regarding whether individual PAGA claims are litigated or arbitrated. It provides only that representative PAGA claims may not be waived outright." 803 F.3d at 434. Similarly here, *McGill* does not single out or discriminate against arbitration because it expresses no preference regarding whether public injunctive relief claims are litigated or arbitrated. *See McGill*, 2 Cal. 5th at 956 (invalidating waiver clause because it "purport[ed] to preclude McGill from seeking public injunctive relief in arbitration, in court, or in any forum"). It holds only that public injunctive relief may not be waived outright and does not prohibit the arbitration of any type of claim. *Id.* at *7.[9]

---

[9] Chase argues *McGill* disfavors arbitration because it "potentially allow[s] a plaintiff to . . . avoid arbitration . . . based only on an allegation . . . that public injunctive relief is actually at issue." (Mot. at 18-19.) But there is no such exception in *McGill*, and Chase is not free to invent one here. Moreover, courts are perfectly able to discern any gaming or "manipulation" of pleadings, and do it regularly. In any event, Plaintiffs here ask that Chase's publicly available disclosures and marketing be free

### 3. *McGill* Does Not Interfere with Any of the Fundamental Attributes of Arbitration

Under *Concepcion*, the FAA preempts generally applicable state contract defenses only when they "interfere with the fundamental attributes of arbitration," such as its informality, speed and cost-effectiveness. *Concepcion*, 563 U.S. at 344; *Sakkab*, 803 F.3d at 434. In *Sakkab*, the Ninth Circuit applied *Concepcion* to the *Iskanian* rule and determined *Iskanian* did not interfere with the fundamental attributes of arbitration. First, the Court determined that, unlike the class-waivers at issue in *Concepcion*, "prohibiting waiver of representative PAGA claims does not diminish the parties' freedom to select informal arbitration procedures." 803 F.3d at 435. As the Court explained, "Because a PAGA action is a statutory action for penalties brought as a proxy for the state, rather than a procedure for resolving the claims of other employees, there is no need to protect absent employees' due process rights . . . [and] PAGA arbitrations therefore do not require the formal procedures of class arbitrations." *Id.* at 436 (emphasis added). PAGA imposed no notice requirements for unnamed aggrieved employees, no procedure to evaluate a representative's ability to adequately represent similarly situated individuals, and no procedures to determine numerosity, commonality, or typicality akin to those of which the Supreme Court disapproved in Concepcion. *Id.* Because PAGA required no additional formal procedures, the Ninth Circuit also concluded that arbitration of PAGA actions would not make the arbitration process slower, more costly, or more likely to generate procedural morass. *Id.* at 438–39.

The *McGill* rule at issue here is like the *Iskanian* rule that the Ninth Circuit approved of in *Sakkab* and is distinguishable from the *Discover Bank* rule at issue in

---

of deceptive misrepresentations and omissions—Plaintiffs plainly seek relief on behalf of the general public.

*Concepcion*. Like the *Iskanian* rule, the *McGill* rule does not raise concerns about protecting the due process rights of absent non-parties and does "not require the formal procedures of class arbitrations" that drove the *Concepcion* Court's determination that the *Discover Bank* rule interfered with arbitration and was preempted. *See Sakkab*, 803 F.3d at 436; *see also Roberts*, 2018 WL 1317346, at *7 ("The issues of class notice and multi-faceted elements which inform class certification particularly under Rule 23(b)(3) do not obtain where a public injunction is sought under 17200."); *McArdle*, 2017 WL 4354998, at *4 ("[C]laims for public injunctive relief do not require burdensome procedures that could stand as an obstacle to FAA arbitration.).

In reliance on *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1081 (1999), Chase argues public injunctive relief is not well-suited for arbitration. But "the parties are free to contract for any procedures they choose for arbitrating, or litigating, public injunctive relief claims." *McArdle,* 2017 WL 4354998, at *4. As the Ninth Circuit recognized, "By their nature, some types of claims are better suited to arbitration than others . . . [and] the FAA contemplates that parties may simply agree *ex ante* to litigate [certain] claims if they find arbitration's informal procedures unsuitable.'" *Sakkab*, 803 F.3d at 437. Accordingly, "the FAA does not require courts to enforce agreements" waiving the right to bring requests for public injunctive relief just because "the formal procedures of litigation [might be] more attractive than arbitration's informal procedures" with respect to those claims. *See id.*

In sum, the *McGill* rule will not make the arbitration process slower, more costly, or more likely to generate procedural morass. The claim would still be arbitrated or litigated exactly the same as any other bilateral arbitration or litigation— i.e., without the need for any additional procedures regarding class notice, class certification, or anything else that might be necessary to protect the rights of non-parties. The only difference would be in the form of relief available at the end of the

19

case. Accordingly, just like the *Iskanian* rule, the *McGill* rule does not raise any of the same concerns about interfering with arbitration that drove the *Concepcion* decision, and therefore is not preempted by the FAA.

## IV.  Conclusion

For the foregoing reasons, the Court should deny Defendant's Motion to Compel.

Dated:  August 13, 2018                   Respectfully submitted,


/s/ Jeffrey D. Kaliel
Jeffrey D. Kaliel (CA Bar No. 238293)
Sophia Goren Gold (CA Bar No. 307971)
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

Attorneys for Plaintiffs
and the Putative Class

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-cv-02477-JGB-SP