UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6 (admin close)

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-2477 JGB (SPx)** | Date | September 18, 2018 |
| Title | *Brandie Johnson v. JP Morgan Chase Bank, N.A.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Defendant JP Morgan Chase Bank, N.A.'s Motion to Compel Arbitration (Dkt. No. 23), ORDERING the Parties to Arbitration, and STAYING the Proceedings Pending Arbitration; and (2) GRANTING Defendant JP Morgan Chase Bank, N.A.'s Request for Judicial Notice (Dkt. No. 31) (IN CHAMBERS)**

Before the Court is Defendant JP Morgan Chase Bank, N.A.'s Motion to Compel Arbitration. (Dkt. No. 23.) After considering all papers filed in support of, and in opposition to, the motion the Court finds this matter suitable for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. On September 12, 2018, the Court vacated the September 17, 2018 hearing and took the matter under submission. (Dkt. No. 32.) The Court GRANTS Defendant's Motion, ORDERS these matters to arbitration, and STAYS all proceedings pending arbitration.

### I.   BACKGROUND

On December 12, 2017, Plaintiff Brandie Johnson ("Johnson") filed her Complaint against Defendant JP Morgan Chase Bank, N.A. ("Defendant" or "JPMorgan"). (Compl. Dkt. No. 1.) The Complaint alleged the following causes of action: (1) declaratory relief for permanent injunction; (2) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750; (3) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (4) violation of the National Bank Act, 12 U.S.C. §§ 85-86. (Compl.) On March 8, 2018, Plaintiffs Lisa McGlothen ("McGlothen") and Justin Heard ("Heard") joined this action. Plaintiffs Johnson, McGlothen, and Heard (collectively, "Plaintiffs") filed a First Amended Complaint

("FAC"), which alleged the following causes of action: (1) declaratory relief for permanent injunction; (2) breach of contract including breach of the implied covenant of good faith and fair dealing; (3) violation of the California Unfair Competition Law, deceptive prong, Cal. Bus. & Prof. Code § 17200; and (4) violation of the California Unfair Competition Law, unfair prong, Cal. Bus. & Prof. Code § 17200.  ("FAC," Dkt. No. 15.)  On May 7, 2018, Plaintiffs filed a Second Amended Complaint ("SAC"), which alleges the following causes of action: (1) breach of contract including breach of the implied covenant of good faith and fair dealing; and (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  ("SAC," Dkt. No. 22.)  They seek relief on behalf of themselves and five classes of similarly situated individuals.  (Id. ¶ 110.)

Plaintiffs seek redress for five of JPMorgan's practices that are allegedly unlawful: (1) assessing overdraft fees on transactions that did not overdraw checking account available balances; (2) assessing overdraft fees on one-time debit card transactions, violating its contractual promise not to do so; (3) assessing out of network ATM fees for simple balance inquiries that precede a cash withdrawal at the same machine, violating its contractual promises not to do so; (4) assessing both insufficient funds fees and overdraft fees on the same transactions; and (5) assessing overdraft fees exceeding the three-per-day cap it promises accountholders.  (Compl. ¶ 1.)

As to the first allegedly unlawful practice, McGlothen alleges she was charged $34.00 overdraft fees for each debit card transaction she initiated into a positive available balance even though available funds were sequestered for those transactions at the time they were authorized. (Compl. ¶¶ 42-43.)  As to the second allegedly unlawful practice, Heard alleges that his Deposit Account Agreement promises that Defendant will not assess overdraft fees on one-time debit card transactions initiated on insufficient funds.  (Id. ¶ 49.)  He alleges that despite this promise, he was assessed an overdraft fee for a one-time payment for an Uber ride and for gas station purchases.  (Id. ¶ 50.)  As to the third allegedly unlawful practice, Heard alleges that on two occasions Defendant charged him two out of network fees because he withdrew cash from an out of network ATM after checking his available balance on the same ATM.  (Id. ¶¶ 66, 68.)  As to the fourth allegedly unlawful practice, McGlothen alleges she attempted to make an online bill payment from her checking account that was rejected and for insufficient funds.  (Id. ¶ 75.) Defendant charged her $34.00.  (Id.)  A few days later, Defendant re-ran the attempted payment as a "retry payment" and then charged McGlothen an overdraft fee of $34.00.  (Id.)  As to the fifth allegedly unlawful practice, Johnson received overdraft or insufficient funds fees on three transactions on a single day but was still charged an extended overdraft fee for the group of transactions posted on that day.  (Id. ¶¶ 107-108.)

JPMorgan filed its Motion to Compel Arbitration on June 16, 2018.  ("Motion," Dkt. No. 23-1.)  After stipulating to extend the briefing schedule, Plaintiffs opposed the motion on August 13, 2018.  ("Opposition," Dkt. No. 28.)  JPMorgan replied on August 31, 2018.  ("Reply," Dkt. 30.)  JPMorgan also filed a request for judicial notice of the Class Action Complaint filed in the

Superior Court of the State of California, County of Riverside, in McGill v. Citibank, N.A., No. RIC1109398 (Cal. Sup. Ct. filed May 27, 2011).[1] ("RJN," Dkt. No. 31.)

JS-6

## II. LEGAL STANDARD

The Federal Arbitration Act (the "FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a general policy favoring arbitration agreements. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate.") Its principal purpose is to "ensure that private arbitration agreements are enforced according to their terms." Concepcion, 563 U.S. at 334 (citing Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468 (1989) (internal quotation marks omitted)). "Arbitration is a matter of contract, and the [FAA] requires courts to honor parties' expectations." Id. at 351.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such an arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id. If such a showing is made, the district court shall also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate.
Id. § 3.

To determine whether to compel arbitration, a district court's involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox, 533 F.3d at 1119 (quoting Chiron Corp. v.

---

[1] Under Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proceedings of other courts, including orders and filings, are also the proper subject of judicial notice when directly related to the case. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (stating that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")

The Court finds it appropriate to take judicial notice of the Class Action Complaint filed in the Superior Court of the State of California, County of Riverside in McGill. See Borneo, 971 F.2d at 248. Thus, the Court GRANTS JPMorgan's Request for Judicial Notice.

Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).  A party seeking to compel arbitration under the FAA has the burden in this regard.  Id.

JS-6

### III. DISCUSSION

JPMorgan moves this Court for an order compelling Plaintiffs to arbitrate their claims on an individual basis on the grounds that a valid, enforceable agreement to arbitrate exists and covers their present claims.  (See generally Mot.)  JPMorgan also seeks a stay of this action pending resolution of the arbitration proceedings.  (Id.)  Plaintiffs oppose the Motion, contending that the arbitration agreement is invalid as a matter of California law.  (Opp'n at 5-13.)

**A. The Arbitration Provision**

Plaintiff Johnson opened her checking account on November 19, 2009 and signed a Personal Signature Card for the account.  (See "Brown Decl.," Dkt No. 23-2 ¶ 2; "Johnson Card," Dkt. No. 23-3.)  By signing her Personal Signature Card, Johnson "acknowledge[d] receipt of the Bank's *Account Rules and Regulations* or other applicable account agreement" and "agree[d] to be bound by the terms and conditions contained therein as amended from time to time."  (Johnson Card (italics in original).)  The Account Rules and Regulations ("Account Rules") referenced included an arbitration agreement requiring individual arbitration and precluding the arbitrator from awarding relief other than on an individual basis, including public injunctive relief.  ("Account Rules," Dkt. 23-5 at 19-20.)  The Account Rules also provided that its terms could be changed upon 30 days' notice, and that "[b]y maintaining [her] Account after the effective date of any change, [Plaintiff] agree[s] to be bound by the changes."  (Id. at 18.)  In December 2011, Defendants provided Johnson with notice of changes to the account terms and a Deposit Account Agreement to be effective February 1, 2012 which amended and replaced the Account Rules.  ("Deck Decl.," Dkt. No. 23-4 ¶ 4; Exh. B, Dkt. 23-5.)  The Deposit Account Agreement similarly contained an arbitration provision ("Arbitration Provision") requiring individual arbitration and precluding arbitrators from awarding relief on other than an individual basis, including public injunctive relief.  (Deposit Account Agreement at 24-25.)

Plaintiff Heard opened his checking account and signed a Personal Signature Card for the account on August 28, 2012.  (Brown Decl. ¶ 3; "Heard Card," Dkt. No. 23-3.)  By signing his Personal Signature Card, Heard "acknowledge[d] receipt of the Bank's *Account Rules and Regulations* or other applicable account agreement" and "agree[d] to be bound by the terms and conditions contained therein as amended from time to time."  (Heard Card (italics in original).)  As explained above, the Deposit Account Agreement amended and replaced the Account Rules and similarly contained an Arbitration Provision.

Plaintiff McGlothen opened her checking account and signed a Personal Signature Card on July 7, 2016.  (Brown Decl. ¶ 4; "McGlothen Card," Dkt. No. 23-3.)  By signing the Personal Signature Card, McGlothen "acknowledge[d] receipt of the Bank's Deposit Account Agreement

or other applicable account agreement" and "agree[d] to be bound by the terms and conditions contained therein as amended from time to time." (McGlothen Card.) As explained above, the Deposit Account Agreement included the Arbitration Provision.

JS-6

The Arbitration Provision expressly informs the accountholder of the parties' agreement to arbitrate, among other topics, all disputes arising from or relating to the deposit accounts and disputes relating to the Deposit Account Agreement or prior account agreements. (Deposit Account Agreement at 24.) Under the terms of the Arbitration Provision, any such disputes must be resolved through individual, non-representative arbitration. (Id. at 24-25.) In relevant part, the Arbitration Provision provides as follows[2]:

> **12. Arbitration**
> You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").
>
> YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW.
>
> UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE ON A CLASS OR REPRESENTATIVE BASIS IN ANY COURT OR IN ARBITRATION.
>
> ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

(Id. at 24.)

///

---

[2] Plaintiffs do not concede that the version of the Deposit Account Agreement attached to JPMorgan's Motion is the version that governs the breach of contract claims. (Opp'n at 7 n.5.) But Plaintiffs and Defendant agree, for purposes of the Motion, that it does not matter which version the Court analyzes, as all versions purport to waive the right to seek public injunctive relief. (Id.)

///
///

JS-6

The Arbitration Provision enumerates the claims subject to arbitration:

> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with use are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims."
>
> The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

(Id.)

The Arbitration Provision further details the agreement to resolve claims on an individualized basis, precluding class actions or representative actions:

> Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:
>
> 1) SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;
> 2) SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;
> 3) BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR
> 4) SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

JS-6

> . . . No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.
>
> . . .
>
> The arbitration may not be consolidated with any other arbitration proceeding.

(Id. at 24-25.)

The Arbitration Provision also includes information regarding the applicable law:

> The arbitrator will decide the Claim in accordance with all applicable law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. A single arbitrator will conduct the arbitration and will use applicable substantive law, including the Uniform Commercial Code, consistent with the FAA and the applicable statutes of limitations or conditions precedent to suit, and will honor claims of privilege recognized at law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

(Id. at 25.)

Earlier terms of the Deposit Account Agreement establish how to determine applicable law:

> This agreement, all accounts and services provided to you, and any dispute related to those accounts and services are governed by federal law and, when not superseded, the law of the state where your account is located. Your account is considered located in the following state:
>
> - If you opened your account in person, the U.S. state where you opened the account;
> - If you opened your account by mail, internet, or other remote means and you resided in a U.S. state where we had branch offices at that time, the state where you resided; or

> - If you opened your account by mail, internet, or other remote means and you did not reside in a U.S. state where we had offices at that time, Ohio.

JS-6

(Id. at 22.)

### B. Whether a Valid Agreement to Arbitrate Exists

The Court's first inquiry is whether Plaintiff entered into a valid arbitration agreement with JPMorgan. Since "arbitration is a matter of contract," (United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)), to evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Arbitration agreements may be invalidated by "generally applicable defenses such as fraud, duress, or unconscionability." Concepcion, 563 U.S. at 339 (quoting Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

However, "[b]efore a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must [first] determine which state's laws to apply." Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010). Here, the forum state is California.

The parties do not dispute that California law applies. (See Mot. at 8; Opp'n at 4.) The Deposit Account Agreement includes a choice of law provision addressing applicable law. (Deposit Account Agreement at 22.) It states:

> This agreement, all accounts and services provided to you, and any dispute related to those accounts and services are governed by federal law and, when not superseded, the law of the state where your account is located. Your account is considered located in the following state:
>
> - If you opened your account in person, the U.S. state where you opened the account;
> - If you opened your account by mail, internet, or other remote means and you resided in a U.S. state where we had branch offices at that time, the state where you resided; or
> - If you opened your account by mail, internet, or other remote means and you did not reside in a U.S. state where we had offices at that time, Ohio.

(Id.) Plaintiffs each opened their account in California. (See Brown Decl. ¶¶ 2-4; Johnson Card; Heard Card; McGlothen Card.) Thus, the Court applies California law.

JS-6

Plaintiffs contend the Arbitration Provision is unenforceable under California law. (Opp'n at 4.) Specifically, Plaintiffs argue that the California Supreme Court's decision in McGill v. Citibank, N.A. instructs that waivers of public injunctive relief in any forum are unconscionable and that the FAA does not preempt this rule because it is a generally applicable contract defense. (Id. at 4-6 (discussing McGill v. Citibank, N.A., 2 Cal.5th 945 (2017).) Plaintiffs assert that McGill applies in this case because they seek public injunctive relief and the Arbitration Provision waives this remedy. (Id. at 5-12.) JPMorgan disputes Plaintiffs' claims actually seek public injunctive relief, rendering McGill inapplicable. (Mot. at 2.) JPMorgan further argues that even if McGill does apply, it is preempted by the FAA. (Id.) The Court finds the relief Plaintiffs seek is not, in fact, public injunctive relief.

Plaintiffs argue that enforcing the Arbitration Provision here would violate California law preserving an individual's right to seek a remedy of public injunctive relief under the California Business and Professions Code. (Opp'n at 5-12 (discussing McGill, 2 Cal 5th).)

McGill held that California law prohibits as unconscionable waivers of public injunctive relief in any forum. McGill 2 Cal.5th at 961. But concerning public injunctive relief, even McGill noted "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." McGill, 2 Cal. 5th at 955 (quoting Broughton v. Cigna Healthplans of Cal., 21 Cal.4th 1066, 1077).

To constitute public injunctive relief, the requested relief must "by and large" benefit the general public. Wright v. Sirius XM Radio, Inc., 2017 WL 4676580, *9 (C.D. Cal. June 1, 2017) (citing McGill, 2 Cal. 5th at 955). Public injunctive relief does not include relief in which there is "no real prospective benefit to the public at large from the relief sought." Kilgore v. Keybank, N.A., 718 F.3d 1052, 10612 (9th Cir. 2013) (en benc). Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief. See Wright, 2017 WL 4676580, at *9. In Wright, the plaintiff sought an injunction to bar the defendant from certain conduct relating to a class of plaintiffs holding lifetime subscriptions to Sirius XM radio. Id. Tacked on to this request, the plaintiff requested an order enjoining the defendant "from committing such unlawful, unfair, and fraudulent business practices" and from "making such material misrepresentations and failing to disclose or actively concealing its practice of regularly canceling and limiting or prohibiting transfers of lifetime subscriptions." Id. (internal quotations omitted). The court determined that these requests were "vague, generalized allegations" and that they did not adequately request public injunctive relief. See id. The court further found that the benefit to the public of the requested relief was merely incidental. Id.

Based on a review of the SAC, the Court concludes that the relief Plaintiffs seek does not constitute public injunctive relief. While Plaintiffs craft their allegations and prayer for relief to request expressly a general injunction and public injunctive relief, a closer inspection reveals that the relief sought is actually intended to redress and prevent further injury to a group of plaintiffs

who have already been injured by JPMorgan's allegedly unlawful practices regarding overdraft and insufficient funds fees. Indeed, the classes Plaintiffs seek to represent are not comprised of the general public; instead, they are comprised of persons who have already incurred the allegedly unlawful fees. (SAC ¶ 110.) See Rappley v. Portfolio Recovery Assocs., 2017 WL 3835259, *6 (C.D. Cal. Aug. 24, 2017). Additionally, not one of the alleged classes includes future JPMorgan customers who will incur such fees as a result of the allegedly unlawful practices. (SAC ¶ 110.)

Plaintiffs' prayers for relief do not elevate the complaint to a request for public injunctive relief such that they can circumvent arbitration. Plaintiffs include the following prayers for relief: a judgment "[d]eclaring that Defendant is not permitted to engage in the deceptive, unlawful, and unfair conduct described herein and is otherwise conduct business lawfully" and "issuing public injunctive relief, including to ensure compliance with the UCL." (Compl. ¶¶ B-C.) Like in Wright, these requests are vague and generalized. See 2017 WL 4676580, at *9. Furthermore, the Court finds that any benefit bestowed on the public would be incidental to Plaintiffs' primary purpose of seeking redress for their own injuries. Just after these vague and generalized injunctive requests, Plaintiffs request "judgment awarding Plaintiffs and all members of the Class restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class as a result of its unlawful, unfair and fraudulent business practices described herein" and "judgment awarding actual and punitive damages to Plaintiffs and the Class in an amount to be determined at trial." (Compl. ¶¶ D, E.) The Court finds these prayers for monetary relief to be the heart of Plaintiffs' claims. Based on the construction of the classes, the breach of contract underpinnings of the claims, and the entirety of the requested relief, the Court finds Plaintiffs' generalized request for injunction merely incidental to vindicating Plaintiffs' alleged injuries.

Furthermore, the requested injunctive relief provides "no real benefit to the public at large." Admittedly, the number of individuals who potentially stand to benefit from the requested injunction will likely exceed substantially the 120 individuals in Kilgore. 718 F.3d at 1061. However, the individuals who stand to benefit are still an inherently circumscribed group. Because Plaintiffs' claims center on breaches of contract, only individuals who enter into contractual relationships with JPMorgan can benefit from this ruling. Notably, this is not the public "at large." Id. Plaintiffs argue that when the largest bank in the country misleads consumers in California, it is for the benefit of all consumers to enjoin the offending conduct. (Opp'n at 8-9.) But the Court finds that the size of a class cannot, on its own, elevate a class action seeking injunction into a matter seeking public injunctive relief. This would convert any consumer action against a large company into "public injunctive relief." Here, the class of people who stand to benefit from any injunctive relief are necessarily limited only to those individuals who have entered into contractual agreements with JPMorgan, not the public at large.

Plaintiffs try to save this argument by contending online availability of the Deposit Account Agreement misleads prospective customers who might choose to open accounts with JPMorgan. (Opp'n at 8-9.) Building on this proposition, Plaintiffs argue their claims are therefore analogous to the deceptive advertising claims in McGill. (Id. at 9.) However, the SAC does not

allege any facts about the public availability of the Deposit Account Agreement, nor does it allege that the public availability of the document constitutes false advertising. (See generally Compl.) Plaintiffs' own pleadings do not support their analogy to McGill but rather highlight important distinctions. Plaintiffs' claims arise from breaches of bilateral contracts between Plaintiffs and JPMorgan, whereas the claims in McGill arose from representations in advertising and marketing materials.

Accordingly, the Court finds that the relief Plaintiffs seeks is not designed to prevent future harm to the public at large, but is primarily intended to redress prior injury to a specific group of putative plaintiffs who have checking accounts with JPMorgan and have incurred overdraft and insufficient funds fees under a narrow set of circumstances. See McGill, 2 Cal. 5th at 955 (discussing Broughton, 21 Cal. 4th 1066 and Cruz v. PacifiCare Health Sys., Inc., 30 Cal. 4th 303 (2003)).

Because the Court finds that Plaintiffs do not seek public injunctive relief, McGill does not apply and cannot be the basis for Plaintiffs to evade arbitration. Because McGill does not apply, the Court will not consider whether the FAA preempts McGill.

Finally, JPMorgan provides evidence—which Plaintiffs do not dispute—that each Plaintiff signed a Personal Signature Card incorporating by reference the Account Rules and Regulations[3] or Deposit Account Agreements. Plaintiffs also do not contend that they rejected the Arbitration Provision. Thus, the Arbitration Provision is valid and enforceable.

## C. Whether the Arbitration Provision Encompasses the Dispute at Issue

"Arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers, 363 U.S. at 589 (internal quotation marks omitted). If a movant successfully demonstrates the existence of a valid arbitration agreement, a court must compel arbitration as long as the movant also demonstrates that the arbitration agreement encompasses the dispute at issue in the litigation. See Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008).

Here, Plaintiffs bring two claims, one for breach of contract and one for violation of Section 17200 of the California Business and Professions Code. (See generally SAC.) The issue is whether Plaintiff's claims fall within the scope of the Arbitration Provision.

The Arbitration Provision states:

> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any

---

[3] As addressed above, the Account Rules and Regulations were amended and replaced by the Deposit Account Agreement.

> related service with use are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims."

(Deposit Account Agreement at 24.)  Under the plain language of the Arbitration Provision, any dispute relating to Plaintiffs' accounts must be resolved through arbitration.  (Id.)  Plaintiffs' asserted causes of action arise from their account agreements with JPMorgan.  Thus, the Arbitration Provision covers Plaintiffs' claims against JPMorgan.

Because JPMorgan has successfully demonstrated that a valid arbitration agreement exists and applies to Plaintiffs' claims, the Court finds arbitration is appropriate.  The Court GRANTS the Motion and orders these matters to arbitration.

The final issue before the Court is JPMorgan's request to stay this proceeding pending the outcome the arbitration proceedings.  (Mot. at 20-21.)  The FAA requires a district court to stay the proceedings upon a party's request supported by a showing that arbitration is warranted.  9 U.S.C. § 3; see also Concepcion, 563 U.S. at 344 (requiring "courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'" under Section 3 of the FAA).  In light of its decision to compel Plaintiff to arbitrate her claims, along with JPMorgan's request to stay these proceedings, the Court STAYS this matter pending arbitration of Plaintiffs' claims.

### IV.  CONCLUSION

For the reasons above, Defendant's Motion to Compel Arbitration is GRANTED and Plaintiffs are ORDERED to pursue their claims in arbitration.  All proceedings in this matter are hereby STAYED and the parties are ORDERED to submit a joint status report within fourteen days of the conclusion of arbitration proceedings.

**IT IS SO ORDERED.**

JS-6