UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 17-2477 JGB (SPx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | *Brandie Johnson v. JP Morgan Chase Bank, N.A.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Plaintiffs' Motion to Lift Stay and for Leave to File Third Amended Complaint (Dkt. No. 35); and (2) DENYING Plaintiffs' Motion for Certification of Interlocutory Appeal and Stay Pending Appeal (Dkt. No. 38)

Before the Court are Plaintiffs' Motion to Lift Stay and for Leave to File Third Amended Complaint ("Motion to Lift Stay" or "MLS," Dkt. No. 35) and Motion for Certification of Interlocutory Appeal and Stay Pending Appeal ("Motion to Certify Appeal" or "MCA," Dkt. No. 38) (together, "Motions"). The Court determines the Motions are appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motions, the Court DENIES the Motions.

## I. BACKGROUND

This case commenced on December 12, 2017, when Plaintiff Brandie Johnson ("Johnson") filed a complaint against Defendant JP Morgan Chase Bank, N.A. ("Defendant" or "JP Morgan") seeking redress for the allegedly unlawful assessment of overdraft fees and ATM fees. ("Complaint," Dkt. No. 1.) On March 8, 2018, Plaintiffs Lisa McGlothen ("McGlothen") and Justin Heard ("Heard") joined this action. (See First Amended Complaint ("FAC"), Dkt. No. 15 at 1, 4.) On May 7, 2018, Plaintiffs filed a Second Amended Complaint, which alleged the following causes of action: (1) breach of contract including breach of the implied covenant of good faith and fair dealing; and (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. ("SAC," Dkt. No. 22.) They sought relief on behalf of themselves and five classes of similarly situated individuals. (Id. ¶ 110.)

  JP Morgan filed a Motion to Compel Arbitration on June 16, 2018, arguing that a valid, enforceable agreement to arbitrate existed and covered Plaintiffs' claims. ("Arbitration Motion" or "Arb. Mot.," Dkt. No. 23.) Plaintiffs opposed the Arbitration Motion, contending that the arbitration agreement was invalid as a matter of California law. ("Arb. Mot. Opp.," Dkt. No. 28 at 5-13.) Specifically, Plaintiffs argued that the California Supreme Court's decision in McGill v. Citibank, N.A., 2 Cal.5th 945 (2017), instructed that waivers of public injunctive relief in any forum are unconscionable, and that the relief Plaintiffs sought was public injunctive relief. (Arb. Mot. Opp. at 4-6.) JP Morgan argued that Plaintiffs' claims did not actually seek public injunctive relief and that McGill was therefore inapplicable. (Arb. Mot. at 2.) On September 18, 2018, the Court granted JP Morgan's Arbitration Motion, ordered the parties to pursue their claims in arbitration, and stayed the proceedings pending arbitration pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.[1] ("Arbitration Order," Dkt. No. 34.) The Court found that McGill did not apply because the relief Plaintiffs sought was not public injunctive relief. (Id. at 11.)

  On November 7, 2018, Plaintiffs filed the Motion to Lift Stay, accompanied by a memorandum in support of the motion ("MLS Memo," Dkt. No. 35-1). In the alternative, Plaintiffs request that the Court certify an interlocutory appeal to the Ninth Circuit. (MLS Memo at 1 n. 1.) On November 20, 2018, Plaintiffs filed their Motion to Certify Appeal, along with a memorandum in support of the motion ("MCA Memo," Dkt. No. 38-1). JP Morgan filed an opposition to the Motion to Lift Stay on December 5, 2018. ("MLS Opp.," Dkt. No. 39.) Plaintiffs filed a reply in support of the MLS on December 21, 2018. ("MLS Reply," Dkt. No. 40.) On the same day, JP Morgan filed an opposition to the MCA. ("MCA Opp.," Dkt. No. 41.) On December 31, 2018, Plaintiff filed a reply in support of the MCA. ("MCA Reply," Dkt. No. 42.)

---

[1] 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

## II.  MOTION TO LIFT STAY AND FOR LEAVE TO AMEND

### A.  Legal Standard

#### 1.  Lift Stay

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254 (1936).  A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case."  Nken v. Holder, 556 U.S. 418, 433 (2009) (internal alterations, citations, and quotations omitted).  "The corollary to this power is the ability to lift a stay previously imposed."  Boyle v. Cty. of Kern, No. 103-CV-05162-OWW-GSA, 2008 WL 220413, at *5 (E.D. Cal. Jan. 25, 2008).

#### 2.  Leave to Amend[2]

Leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'"  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Leave to amend is not automatic, however.  The Ninth Circuit considers a motion for leave to amend under five factors: bad faith, undue delay, prejudice to the opposing party, the futility of amendment, and whether the plaintiff has previously amended his or her complaint.  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).  However, "[f]utility alone can justify the denial of a motion for leave to amend."  Id.  Further, a district court may deny leave to amend "when the movant presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally."  Id. (internal quotation marks omitted.)

### B.  Discussion

Plaintiffs move to lift the stay previously imposed by this Court and request leave to amend their complaint to include additional facts showing that the relief they seek is public

---

[2] Defendant argues that Plaintiff's MLS "should be denied as a disguised and improper motion for reconsideration."  (MLS Opp. at 9.)  Plaintiffs counter that Defendant "cannot explain how the relief Plaintiffs seek converts their Motion into one seeking reconsideration.  Nowhere do Plaintiffs ask the Court to vacate its Order."  (MLS Reply at 5.)  They point out that Defendant has cited no case in which a court treated a motion to amend a complaint as a motion for reconsideration.  (Id.)  The Court sees no reason why Plaintiffs' motion for leave to amend is any more a disguised request for reconsideration than motions for leave to amend filed after dismissal for failure to state a claim.  It therefore applies the standard applicable to motions for leave to amend, rather than the standard urged by Defendant.

injunctive relief, which they believe would make their claims non-arbitrable under McGill. (MLS Memo at 1, 3.) Defendant argues that "a stay of an action under section 3 of the FAA is mandatory 'until such arbitration has been had in accordance with the terms of the agreement.'"[3] (MLS Opp. at 8 (quoting 9 U.S.C. § 3).) Here, because arbitration has not even begun, Defendant asserts that the stay must remain in place. (Id.) It points out that Plaintiffs cite no case indicating that "a party subject to court-ordered arbitration may petition the court to lift an arbitration-related stay in order to re-evaluate whether a plaintiff's claims are subject to arbitration." (Id. at 9.) However, Defendant has not cited any case holding that a § 3 stay may be lifted only after "arbitration has been had." See 9 U.S.C. § 3. Rather, Defendant relies exclusively on the text of § 3.

Plaintiffs argue that the text of § 3 applies only to arbitrable claims, while their "proposed amendments aim to sufficiently plead *non-arbitrable* claims[.]" (MLS Memo at 2.) Plaintiffs also point to Morris v. Morgan Stanley & Co., which held that district courts retain jurisdiction over questions "wholly outside the scope of the arbitration process" even after a case has been stayed pursuant to § 3. 942 F.2d 648, 654 (9th Cir. 1991). There, the Ninth Circuit distinguished between cases in which a party "seek[s] district court interference with the process of arbitration"[4] and those in which a party seeks "a decision on a question regarding [its] rights as federal [a] court litigant[]." Id. at 654. In Morris, the district court had granted a motion to dismiss for failure to prosecute while arbitration was pending. Id. at 651. The Ninth Circuit affirmed, stating

> The § 3 stay here was misused by Appellants for the purpose of delay, and thus no longer was a valid avenue for resolution of the state claims. In light of the seriousness of Appellants' intransigence, we cannot say it was outside the jurisdiction of the district court to dismiss these claims under Rule 41(b).

Id. at 654. The circumstances of this case are quite different. Here, Plaintiffs do not contend that Defendant has obstructed the arbitration process or taken advantage of the stay. However, this case is not clearly one, like Thompson, 607 F. Supp. 780, in which the Court is being asked to interfere with the arbitration process.

---

[3] Section 3 also allows for a stay to be terminated if the applicant for the stay is "in default in proceeding with such arbitration." 9 U.S.C. § 3; see also Sink v. Aden Enters., 352 F.3d 1197, 1201 (9th Cir. 2003) ("If a party defaults after an initial stay and reference to arbitration, that permits a district court to vacate the § 3 stay.") Neither party argues this provision applies here.

[4] For example, the Morris decision discussed Thompson v. Zavin, 607 F. Supp. 780 (C.D. Cal. 1984), in which the "plaintiff asked the district court to order an arbitrator, after a § 3 stay was entered, to issue subpoenas compelling defendants to attend the arbitration, or in the alternative, to issue the subpoenas." Morris, 942 F.2d at 653. The Thompson court declined to issue the order, holding that "§ 3 requires a court to refrain from interfering in the conduct of an arbitration once there is a stay." Id.

Outside of the Ninth Circuit, some courts have declined to grant leave to amend claims referred to arbitration pursuant to the FAA. See, e.g., Segner v. Secs. Am., Inc., No. 3-10-cv-01884-F, 2011 U.S. Dist. LEXIS 162817, at *47 (N.D. Tex. Aug. 4, 2011) ("While the Court would normally grant Plaintiff leave to amend as to these . . . claims, the outcome of the Alternative Motions to Compel Arbitration [i.e., that the Court had granted the motions to compel arbitration as to those claims] precludes the Court from doing so at this stage."); Berge Helene Ltd. v. GE Oil & Gas, Inc., No. CIV.A.H-08-2931, 2009 WL 1835193, at *3 (S.D. Tex. June 26, 2009) ("The Court can find no authority permitting it at this time to take any action on the arbitrable claim, even though Plaintiff . . . no longer seeks to pursue it [where Plaintiff sought to lift the stay and file an amended complaint eliminating the single arbitrable claim]. To dismiss the claim after the arbitration has commenced appears to contravene Section 3's mandate, and the Court declines to do so.")

Other courts, however, have held to the contrary. Plaintiffs cite Miller v. Aaacon Auto Transp., Inc., which found that "a stay pending arbitration is equivalent to an injunction, which 'may be modified or dissolved in the discretion of the court when conditions have so changed that it is no longer needed or is rendered inequitable." (MLS Memo at 3 (quoting Miller, 545 F.2d 1019, 1020 (5th Cir. 1977).) See also MacRury v. Am. Steamship Co., No. 16-CV-13889, 2017 WL 4803704, at *6 (E.D. Mich. Oct. 25, 2017) (lifting stay and granting leave to file an amended complaint alleging facts making the claim non-arbitrable).

After considering the mixed case law on this question, the Court is not convinced it has the power to lift the stay and allow amendment before "arbitration has been had." See 9 U.S.C. § 3. Moreover, even if the FAA allows the Court to lift the stay, the Court declines to exercise what discretion it may have to do so. Leaving the stay intact until the completion of arbitration serves the interests of judicial economy and advances Congress's purpose in enacting the FAA: "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011).

Further, even under the Miller standard, which Plaintiffs cite in support of their argument, the Court finds the stay should remain in place. Here, "conditions have [not] so changed that [the stay] is no longer needed or is rendered inequitable." 545 F.2d at 1020. Indeed, conditions have not changed at all. Rather, Plaintiffs seek leave to more artfully plead the same claims in order to circumvent the arbitration agreements they entered into. The proposed changes would not affect the Court's determination that "any benefit bestowed on the public would be incidental to Plaintiff's primary purpose of seeking redress for their own injuries." (Arbitration Order at 10.) Even with the additional facts Plaintiffs propose, their claims are fundamentally contract claims, seeking to vindicate the rights of JP Morgan accountholders. Furthermore, Plaintiffs have had three previous opportunities to plead facts sufficient to state a claim that they are entitled to public injunctive relief. (See Compl.; FAC; SAC.) Their present attempt to amend confirms the Court's impression that the request for public injunctive relief was tacked on to the complaint for the purpose of avoiding arbitration.

For the foregoing reasons, Plaintiffs' Motion to Lift Stay is DENIED.

### III. MOTION TO CERTIFY INTERLOCUTORY APPEAL

**A. Legal Standard**

As a general rule, an appellate court should not review a district court ruling until after the entry of final judgment. See 28 U.S.C. § 1291; Hansen v. Schubert, 459 F.Supp.2d 973, 999 (E.D. Cal. 2006) (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 474 (1978), and In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982), aff'd sub nom. Arizona v. Ash Grove Cement Co., 459 U.S. 1190 (1983)). There are, however, situations in which "appellate review of a particular ruling will materially advance disposition of the claims before the trial court." Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d 962, 966 (9th Cir. 1981). In such cases, "the appropriate procedure for the district court is to certify its order for interlocutory appeal under 28 U.S.C. § 1292(b)." Id. Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

"An interlocutory appeal should be granted 'only in exceptional situations in which allowing [such an appeal] would avoid protracted and expensive litigation.'" Hansen, 459 F.Supp.2d at 999-1000 (quoting In re Cement Antitrust Litig., 673 F.2d at 1026). "The party seeking certification of an interlocutory appeal has the burden to show the presence of those exceptional circumstances." Id. (citing Coopers & Lybrand, 437 U.S. at 474-75).

Under § 1292(b), a district court must make three findings before certification of an order for immediate appeal is appropriate: (1) that the order involves a controlling question of law about which (2) there is substantial ground for difference of opinion, and (3) that an immediate appeal will "advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); see In re Cement Antitrust Litig., 673 F.2d at 1026. If the district court includes such findings in its order, the circuit court will then determine "whether the district court has properly found that the certification requirements of [§ 1292(b)] have been met," and whether it will, in its discretion, permit the appeal. Id. "Though there is no specified time limit for seeking certification, § 1292(b) provides for an immediate appeal, and a district judge should not grant an inexcusably dilatory request." Wallis v. Centennial Ins. Co., No. CIV. 08-02558 WBS, 2012 WL 1552766, at *1 (E.D. Cal. May 1, 2012) (internal quotation marks omitted).

B.  Discussion

Plaintiffs move the Court to certify the Arbitration Order, which was issued on September 18, 2018, for interlocutory appeal under § 1292.  (MCA Memo at 1.)  Defendant argues that the MCA should be denied as untimely.  (MCA Opp. at 5–6.)  The text of § 1292(b) provides a time limit only for the filing of an appeal after the district court has certified an order for interlocutory appeal.  Section 1292(b) seems to contemplate that such certification will be made in the text of the appealable order.  See 28 U.S.C. § 1292(b) ("When a district judge, in making . . . an order not otherwise appealable under this section, shall be of the opinion that such order [meets the requirements for interlocutory appeal], he shall so state in writing in such order.") (emphasis added).  Nonetheless, § 1292(b) does not explicitly prohibit a court from issuing a later order declaring the previous order appealable, and Defendants do not argue that Plaintiff's MCA is improper on the basis that it seeks such a declaration after the fact.

However, Defendant cites a number of cases finding two- to three-month delays in filing a request for certification of appeal to be untimely.  (MCA Opp. at 5–6 (citing Wallis, 2012 WL 1552766, at *2 (finding three-month delay rendered motion untimely); Spears v. Washington Mut. Bank FA, No. C-08-00868 RMW, 2010 WL 54755, at *2 (N.D. Cal. Jan. 8, 2010) (two-and-a-half month delay rendered motion untimely); Brecher v. Citigroup Glob. Markets, Inc., No. 309CV1344AJBMDD, 2012 WL 12953433, at *6 (S.D. Cal. Mar. 6, 2012) (finding delay of 77 days untimely); Fenters v. Yosemite Chevron, 761 F. Supp. 2d 957, 1005 (E.D. Cal. 2010) (finding delay of 78 days untimely).  Plaintiffs respond by attempting to distinguish the cases cited by Defendant "because in each of them, the delay was unexplained and generally prejudicial to the opposing party."  (MCA Reply at 1.)  However, Plaintiffs here have failed to offer any explanation for their delay of nearly two and a half months.[5]  Because the Court finds Plaintiffs' request to be "inexcusably dilatory," it declines to certify the Arbitration Order for appeal.  See Wallis, 2012 WL 1552766, at *1.

IV.  CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' Motion to Lift Stay and for Leave to Amend and DENIES Plaintiff's Motion for Certification of Interlocutory Appeal.

**IT IS SO ORDERED.**

---

[5] In their Reply, Plaintiffs hint that the delay was because their "primary goal" was to pursue leave to amend their complaint to "eliminate any pleading deficiencies[.]"  (MCA Reply at 2.)  However, if Plaintiffs truly believed the Court had reached the wrong decision on the basis of the allegations as pleaded in the SAC, they would have moved immediately for certification of appeal, rather than spending months drafting their MLS and redrafting their complaint for a fourth time.